LOTTINGER, Judge.
This is an action ex contractu wherein the petitioner, Missouri Pacific seeks to be reimbursed by the defendant, The Port Commission and Travelers, for damages paid Mr. Dudley J. Arnaud for accidental injuries sustained during his course of employment with petitioner. The Lower Court rendered a judgment in favor of the defendant and dismissed the petitioner’s petition. The petitioner has appealed.
The facts disclose that on November 6, 1964, Mr. Dudley J. Arnaud sustained severe back injuries while in the course and scope of his employment with petitioner. The accident occurred at a switch stand serving the railroad track owned and maintained by the Port Commission within its port facilities near Port Allen, Louisiana. In due course of time, the petitioner made a settlement of all claims by Mr. Arnaud under the provisions of the Federal Employers’ Liability Act, 45 U.S.C. § 51 et seq., for the sum of $37,621.40. In the settlement release, the railroad was subrogat-ed to all of the employee’s claims against *459 the Port Commission and the employment of Arnaud with the petitioner was terminated.
The Federal Employers’ Liability Act, at 45 U.S.C.A. § 53 provides as follows:
“In all actions on and after April 22, 1908 brought against any such common carrier by railroads under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: Provided, That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.”
In the case before us we are not concerned with determination of the concurring negligence of Mr. Arnaud and his employer because this has already been determined by the settlement agreement between the parties. What we are primarily interested in determining at this time is: Was the Port Commission negligent; and, if so, was its negligence an approximate cause of the accident or, more properly, the injury to Mr. Arnaud.
Article VI, Section 1 of the Operating Agreement which was in existence between the Port Commission and the railroad at the time of the unfortunate accident, provides, in part, as follows :
“(A) Railroad companies shall not have or make against the commission any claim or demand for any injury, death, loss, or damage whatsoever by reason of any defect in the tracks and appurtenances of the commission, referred to in Article II of this agreement, where reasonable care, skill and diligence has been used in the maintenance, repair, and renewal of said tracks and appurtenances.”
“(C) Commission agrees to indemnify and hold harmless railroad companies, jointly and severally, for injury, death, loss, or damage caused by any negligent act or omission of the Commission, its officers, employees, agents, contractors, licen-cees, and invitees, to the person or property of the railroad companies, their officers, employees, and agents and to the person or property of any other person or corporation, while on or about the Commission’s tracks and facilities.”
Article II, Section 1(D) of the Operating Agreement further provides:
“In the event the Commission shall fail to repair any defects in said tracks here-inabove described within a reasonable time after an operating railroad shall have given commission written notice specifying such defect, then the operating railroad which shall have given notice (1) shall have the right to refuse to operate over such tracks until repaired to its satisfaction, or (2) shall have the right, but shall not be obligated, to make all necessary repairs at once . . .
It is apparent that before the railroad has a claim or can make a claim against the commission, there must be a showing by the railroad that the commission failed to use reasonable care, skill and diligence in maintenance, repair and renewal of the tracks and appurtenances.
Mr. L. G. Smith, Foreman III for the Port Commission, who had been in the railroading since 1923, with the exception of the 1930’s, and who had a vast amount of experience in this field testified that every couple of weeks someone from his crew would go around and throw the switches and clean them, oil them to see if *460 they were working freely. This maintenance procedure included the track switch in question. There is no testimony that such a cleaning and inspecting routine did not take place or that such a routine was improper under the railroad operating procedures.
Mr. Edward Smith, a brakeman for the railroad testified that he had thrown that particular switch a number of times and that he had told Mr. McClendon that this particular switch was not unusually hard to throw.
The railroad brakeman operated . the switch the day before the accident and he reported to no one that he found anything wrong with the switch. Mr. Arnaud himself had thrown this particular switch on previous occasions, and he had failed to report to his superiors or to the Port Commission that the switch was in a defective condition. Mr. C. W. Herbert, head of the Port Commission testified that from the year 1960 until the date of the accident no written notice or complaint had ever been received by the Port Commission concerning the condition of the switch in question.
Mr. Arnaud testified that the switch was bent and that he reached over to pull it, however, he didn’t remember whether he turned the switch or not. He testified that he reached over and grabbed the switch and came up with it but he doesn’t remember if he “lined” it. He could not recall how far he came up with it, but the pain in the back apparently hit him when he reached over to line the switch. The testimony was to the effect that Arnaud moved the switch very little if at all although Mr. H. O. Garrie, plaintiff’s general foreman, testified that the difficult part about throwing the switch was from of the way up until the handle was past the center.
There is really no showing by the petitioner that the railroad switch, its operation and maintenance was not according to good railroad practices. The only testimony on this particular point was that of the various representatives of the Port Commission and they contended that the switch was maintained in a good condition of repair.
We feel that the petitioner has failed to sustain its burden of proof of negligence on the part of the defendant and in the absence of a clear showing of error in the decision of the lower court such decision will be affirmed.
For the reasons above assigned the judgment of the lower court will be affirmed, all costs of this appeal to be paid by the plaintiff.
Affirmed.